# EXHIBIT B

CHICAGO REGIONAL COUNCIL OF CARPENTERS

UNITED BROTHERHOOD OF CARPENTERS

AND JOINERS OF AMERICA

# COMMERCIAL AREA AGREEMENT

## COOK, LAKE AND DUPAGE COUNTIES,

## IN ILLINOIS

### 2005 - 2008

### CONSTRUCTION DIVISION

Offices:

12 East Erie Street

Chicago, IL 60611

Telephone: (312) 787-3076

# INDEX

| Article | | Page |
|---------|---|------|
| | Joint Agreement | 1 |
| I | Bargaining Unit | 1 |
| | Recognition | 2 |
| II | Union Security | 2 |
| III | Sub-Contracting | 3 |
| IV | Wages | 5 |
| | Show Up Time | 5 |
| | Minimum Hours After Work Commenced | 5 |
| V | Pay Day | 5 |
| | Pay on Termination of Employment | 6 |
| VI | Hours of Labor | 8 |
| | Transportation | 10 |
| VII | Shift Work | 11 |
| VIII | Insurance | 12 |
| IX | Safety | 12 |
| X | Job Steward | 12 |
| XI | Foreman | 14 |
| XII | Health and Welfare Fund | 14 |
| XIII | Pension Fund | 17 |
| XIV | Training Fund | 19 |
| XV | Bonding | 22 |
| XVI | Tools | 22 |
| XVII | Apprentices | 23 |
| XVIII | Settlement of Disputes | 25 |
| XIX | Use of Machinery, Tools and Factory Made Products | 27 |
| XX | Miscellaneous Provisions | 27 |
| XXI | Most Favored Nations | 32 |
| XXII | Pile Driving – Scope of Work | 34 |
| | Working Rules | 35 |
| | Territorial Jurisdiction | 37 |
| XXIII | Millwright - Working Rules | 37 |
| XXIV | Shingling, Siding and Insulating Mechanics General | 39 |
| | Claims and Jurisdiction of the Shingling Mechanic | 39 |
| | Claims and Jurisdiction of the Siding Mechanic | 39 |
| | Claims and Jurisdiction of the Insulating Mechanic | 39 |
| XXV | Installers of Floor and Wall Products | 40 |
| XXVI | Lathers - Scope of Work | 41 |
| | Lathers Working Rules | 42 |
| | Local Dues | 42 |
| | Registration Day | 43 |

2 of this Article, shall forfeit his right of employment, and the EMPLOYER shall, within three (3) working days of being notified by the UNION in writing as to the failure of an Employee to join the UNION or to maintain his membership therein, discharge such Employee. For this purpose the requirements of membership and maintaining membership shall be in accordance with State and Federal Laws. The EMPLOYER shall not be in default unless it fails to act within the required period after receipt of written notice.

2.4    The EMPLOYER shall, on the day that he hires an Employee who is not a member of the UNION, notify the UNION, or the Job Steward of the name, address and date of initial employment of such Employee, as well as the jobsite. In the absence of a Job Steward, the EMPLOYER also agrees to advise the Employee of the provisions of this Article.

**ARTICLE III**
**SUB-CONTRACTING**

3.1    The parties hereto being in the Construction Industry qualify under the proviso of Section 8 (e) of the National Labor Relations Act, 1947 as amended.

3.2    EMPLOYER shall not contract or subcontract any work coming within the jurisdictional claims of the UNION to any person, firm or corporation not covered by a Collective Bargaining Agreement with the UNION, provided, however, that the provisions of this paragraph shall apply only to the contracting and subcontracting of work to be done at the site of construction, alteration, painting or repair of a building, structure or other work.

3.3    EMPLOYER, in recognition of the territorial and occupational jurisdiction of the UNION, shall not subcontract or contract out jobsite work coming within the jurisdiction of the Carpenters Union nor utilize on the jobsite the services of any other person, company or concern to perform such work that does not observe the same wages, fringe benefits, hours and conditions of employment as enjoyed by the Employees covered by this Agreement.

3.4    Any EMPLOYER who sublets any of the work coming within the jurisdiction of Carpenters shall assume the obligations of any subcontractor to the extent of Carpenter labor employed on work under contract with the EMPLOYER for prompt payment of Employee's Wages, Health and Welfare, Pension and Apprentice Training Contributions, including reasonable attorney fees incurred in enforcing the provisions hereof, provided the subcontractor is not bond-

-3-

5.3    In the event that an Employee does not receive the wages according to the foregoing, then in that event he shall be paid in addition thereto at the regular rate, all time he spends, (1) waiting to be paid, and/or (2) all time expended by him to receive his pay, but in no event less than one (1) hour of pay nor more than four (4) hours for any time so spent. Saturday, Sundays and National Holidays are excluded.

5.4    (a)    Employees working from a "Bos'ns Chair," or suspended from cables or ropes shall receive not less than twenty-five cents ($0.25) per hour above the applicable rate of journeyman's pay.

(b)    Employees required to work on or with any materials that are treated with any creosote materials, or acid that may cause rashes, burns, or toxic reaction, or are required to wear any type of special breathing apparatus as protection against inhalation of noxious gas or dust, shall not receive less than twenty-five cents ($0.25) per hour above the applicable rate of journeyman's pay.

(c)    The EMPLOYER shall furnish any necessary protective medication such as petroleum jelly, to prevent burns from said creosote or chemicals which may prove injurious to the skin. Gloves shall also be furnished by the EMPLOYER.

(d)    Nothing in this section of this Agreement (premium pay) shall be so construed as to prohibit the opening to arbitration between the EMPLOYER and the UNION at any time during the term of this Agreement of any work to be performed by Employees, of such nature as the UNION deems hazardous or which makes exceptional demands on an Employee's health and safety and thereby qualify for premium pay, which is not covered by Articles in this section.

(e)    In the event that the UNION notifies the EMPLOYER that certain work is hazardous in nature, as defined in sub-section (b) above, a determination shall be made to establish the wage scale as well as working conditions and such scale shall be retroactive to commencement of such hazardous work.

-7-

6.13    On all jobs where the Employees are required to use EMPLOYER transportation to the jobsite, wages shall commence at 8:00 a.m.

## ARTICLE VII
## SHIFT WORK

7.1    There shall not be more than one (1) shift of work (8:00 a.m. to 4:30 p.m.) performed in any one (1) day and at any one (1) site, except with UNION permission.

7.2    A pre-job conference shall take place between the President of the Carpenters Regional Council and the Business Representative of the district, wherein the work will be performed, and with the EMPLOYER or his representative before shift work will be allowed.

7.3    No shift work shall be permissible unless the shifts shall run a minimum of five (5) consecutive working days. When a jobsite qualifies for the use of a second and third shift the following shall be applicable:

(1)    The First Shift shall start at 8:00 a.m. and end at 4:30 p.m., which shall be eight (8) hours.

(2)    The Second Shift shall start at 4:30 p.m. and end at 12:00 midnight.

(3)    The Third Shift shall start at 12:00 midnight and end at 7:30 a.m.

(4)    The Second and Third Shifts shall receive eight (8) hours pay for seven (7) hours worked.

(5)    Lunch hours for shift work shall be:
First Shift - 12:00 noon to 12:30 p.m.
Second Shift - 8:30 p.m. to 9:00 p.m.
Third Shift - 4:00 a.m. to 4:30 a.m.

7.4    Employees required to work through their specified lunch hour shall be paid double time for that period.

7.5    Any work done in excess of eight (8) hours on the first shift and in excess of seven hours on the second shift and third shift shall be paid wages at the rate of double time.

7.6    All Employees working between the hours of 8:00 a.m. Saturday and 8:00 a.m. Monday shall be paid wages at the rate of double time.

7.7    No Employee shall work more than one (1) shift in any twenty-four hour period.

-11-

of the first one hundred and seventy-five (175) hours worked for an EMPLOYER during each calendar month by all of its Employees who are covered by this Agreement in amounts determined and allocated by the Executive Committee of the Union effective June 1, 2005, June 1, 2006 and June 1, 2007.

The one hundred seventy-five (175) hour cap will remain in effect throughout the term of this contract providing that the reserve does not fall below fifty-three percent (53%) of the previous twelve (12) months operating expenses of the Health and Welfare Fund. While the one hundred seventy-five (175) hour cap shall cease to be in effect on the last day of the Agreement, contributions for the month of May 2008 will be calculated as in the preceding month and not exceed one hundred seventy-five (175) hours.

12.2    The EMPLOYER agrees to be bound by the Agreement and Declaration of Trust establishing the Chicago Regional Council of Carpenters Health and Welfare Fund, by any present and future amendments thereto and irrevocably designates as his representative on the Board of Trustees such Trustees as are named in said Agreement and Declaration of Trust, as EMPLOYER Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust as it may be amended from time to time, and agrees to be bound by all action taken by said EMPLOYER Trustees pursuant to the said Agreement and Declaration of Trust as amended from time to time.

12.3    The contributions of the EMPLOYERS covered by this Agreement shall be used exclusively to provide group insurance and other related Health and Welfare Benefits for eligible Employees and/or their families in such form or amount as the Trustees of the Health and Welfare Fund may determine.

12.4    Payment of EMPLOYER contributions to the Health and Welfare Fund shall be made on the dates and in the manner and form prescribed by the Trust Agreement or as designated by the Trustees.

12.5    The said Health and Welfare Fund is and shall continue to be administered by an equal number of representatives of the EMPLOYERS and of the UNION pursuant to the Agreement and Declaration of Trust heretofore signed by the EMPLOYERS and the UNION, as now in effect and as it may be amended from time to time, in the manner provided in the

-15-

13.8    In the event that an EMPLOYER becomes delinquent in making any of the afore-said reports and payments and is so advised by formal notification in writing by the Administrative Fund Office, the EMPLOYER shall pay in addition to the amount due, reasonable fees of Certified Public Accountants as expressly used to establish the amount due, reasonable fees of Attorney in effectuating payment, and liquidated damages in an amount as determined in accordance with the Agreement and Declaration of Trust.

13.9    The EMPLOYER shall make contributions on behalf of each of its Employees employed by EMPLOYER in a management or supervisory position who is also engaged in work of a character falling within the jurisdiction covered by this Collective Bargaining Agreement in an amount of no less than one hundred and sixty (160) hours per month. Each such EMPLOYER shall execute a Participation Agreement with the Trustees of the Chicago Regional Council of Carpenters Pension Fund, upon the request of such Trustees, for such greater or lesser amounts of hours as the Trustees may deem appropriate.

13.10    The contributions referred to in this Article shall be paid with respect to all hours worked by an Employee covered by this Agreement irrespective of the geographical area where work is performed or the geographical jurisdiction of the UNION, provided that EMPLOYER shall not be required to pay contributions to the Chicago Regional Council of Carpenters Pension Fund for hours worked outside the geographical jurisdiction of the UNION if EMPLOYER is required to pay contributions to another multi-employer pension benefit fund based on such hours.

13.11    The collection of amounts due under this Article shall not be subject to the Settlement of Disputes procedures established in Article XVIII.

### ARTICLE XIV
### TRAINING FUND

14.1    Each EMPLOYER shall pay into the Chicago Regional Council of Carpenters Apprentice Training Fund (hereafter referred to as "Training Fund") an amount per hour for each of the first one hundred and seventy-five (175) hours worked for an EMPLOYER during each calendar month by all Employees who are covered by this Agreement in amounts determined and

nish or rent any power operated tools, machinery, or equipment, to be used on any work to be performed by his EMPLOYER.

16.2    EMPLOYER shall provide, for the exclusive use of Carpenters, suitable lighted and heated places for them to eat and change their clothes.

16.3    EMPLOYER shall also provide a safe and secure place, on the job, for the storage of tools, shoes and clothing, both during and after working hours, however, the EMPLOYER shall replace or pay for the loss of any tools, shoes, clothing, but in no event shall the EMPLOYER pay more than two thousand five hundred ($2,500.00) dollars for each Employee. On the request of the EMPLOYER it shall be the responsibility of the Employee, when storing tools, to furnish a list of tools and indicate the estimated value of such tools on forms supplied by the EMPLOYER. A duplicate copy of said list shall be given to the Employee signed by Management.

16.4    EMPLOYER shall furnish and make available at the jobsite all equipment generally and customarily used to sharpen the various tools used by Employees hereunder, but not including hand saws. Except for hand saws, sharpening of his own tools shall be the choice of the Employee at all times although the Employee may, if he chooses, permit his tools to be sharpened other than on the jobsite by and at the expense of the EMPLOYER. Employees may sharpen tools during working hours, and the time thereby used shall be considered time worked. Hand saws may be sharpened other than at the jobsite by and at the expense of the EMPLOYER. Any automatic equipment provided by the EMPLOYER on the jobsite for the purpose of sharpening tools (e.g. Foley Filer) shall be operated by a member of the Bargaining Unit.

## ARTICLE XVII
## APPRENTICES

17.1    Every EMPLOYER who employs an average of five (5) Journeymen during six (6) months of a twelve (12) month period must employ one (1) Apprentice for every three (3) Carpenters, but not more than five (5) Apprentices for each EMPLOYER on any one jobsite. Additional Apprentices may be granted to any EMPLOYER upon proper application to the Trustees of the Chicago Regional Council of Carpenters Apprentice Training Fund.

-23-

# INDEX

| Article | | Page |
|---|---|---|
| | Joint Agreement | 1 |
| I | Bargaining Unit | 1 |
| | Recognition | 2 |
| II | Union Security | 2 |
| III | Sub-Contracting | 3 |
| IV | Wages | 5 |
| | Show Up Time | 5 |
| | Minimum Hours After Work Commenced | 5 |
| V | Pay Day | 5 |
| | Pay on Termination of Employment | 6 |
| VI | Hours of Labor | 8 |
| | Transportation | 10 |
| VII | Shift Work | 11 |
| VIII | Insurance | 12 |
| IX | Safety | 12 |
| X | Job Steward | 12 |
| XI | Foreman | 14 |
| XII | Health and Welfare Fund | 14 |
| XIII | Pension Fund | 17 |
| XIV | Training Fund | 19 |
| XV | Bonding | 22 |
| XVI | Tools | 22 |
| XVII | Apprentices | 23 |
| XVIII | Settlement of Disputes | 25 |
| XIX | Use of Machinery, Tools and Factory Made Products | 27 |
| XX | Miscellaneous Provisions | 27 |
| XXI | Most Favored Nations | 32 |
| XXII | Pile Driving - Scope of Work | 34 |
| | Working Rules | 35 |
| | Territorial Jurisdiction | 37 |
| XXIII | Millwright - Working Rules | 37 |
| XXIV | Shingling, Siding and Insulating Mechanics General | 39 |
| | Claims and Jurisdiction of the Shingling Mechanic | 39 |
| | Claims and Jurisdiction of the Siding Mechanic | 39 |
| | Claims and Jurisdiction of the Insulating Mechanic | 39 |
| XXV | Installers of Floor and Wall Products | 40 |
| XXVI | Lathers - Scope of Work | 41 |
| | Lathers Working Rules | 42 |
| | Local Dues | 42 |
| | Registration Day | 43 |

|  |  |  |
|---|---|---|
|  | Rocklath | 43 |
|  | Lather Territorial Jurisdiction | 43 |
| XXVII | Dues Check-Off | 43 |
| XXVIII | Industry Advancement Fund | 44 |
| XXIX | Chicagoland Construction Safety Council | 44 |
| XXX | Construction Industry Service Corporation | 45 |
| XXXI | Market and Geographic Area Committee | 45 |
| XXXII | Substance Abuse and Recovery Program | 47 |
| XXXIII | Divers and Diver Tenders |  |
|  | Scope of Work | 51 |
|  | Rates of Pay | 51 |
|  | Working Conditions | 52 |
|  | Training & Safety | 52 |
| XXXIV | United Brotherhood of Carpenters National Fund | 53 |
| XXXV | Labor/Management Union Carpentry Cooperation Promotion Fund | 53 |
| XXXVI | Savings Clause | 54 |

## JOINT AGREEMENT

THIS AGREEMENT is effective June 1, 2005, by and between the: MID-AMERICA REGIONAL BARGAINING ASSOCIATION, for and on behalf of the present and future members, together with such other employers who become signatory to this Agreement (referred to herein as "Employer or Employers") and the CHICAGO REGIONAL COUNCIL OF CARPENTERS, for and on behalf of the Local Unions under its jurisdiction in Cook, Lake and DuPage Counties, Illinois (hereinafter referred to as the "Union").

This Agreement shall be in full force and effect from June 1, 2005 through May 31, 2008.

NOW THEREFORE, it is hereby agreed as follows:

## ARTICLE I
## BARGAINING UNIT

1.1    The Bargaining Unit shall consist of all Journeymen, Foremen, Apprentices and Trainees engaged in work at the construction site covered by the occupational jurisdiction of the "UNION" including, but not limited to, the milling, fashioning, joining, assembling, erection, fastening or dismantling of all material of wood, plastic, metal, fiber, cork, and composition, and all other substitute materials; the handling, erecting, installing and dismantling of machinery and equipment, hydraulic jacking and raising, and the manufacturing of all material where the skill, knowledge and training of the Employees are required, either through the operation of machine or hand tools. The Bargaining Unit shall also consist of all Journeymen, Foremen, Apprentices and Trainees engaged in work as Carpenters and Joiners, Millwrights, Pile Drivers; Bridge Dock and Wharf Carpenters, Divers; Underpinners, and Timbermen and Core-drillers; Ship Wrights, Boat Builders and Ship Carpenters, Joiners and Caulkers, Cabinet Makers, Bench Hands, Stair Builders, Millmen, Wood and Resilient Floor Layers, and Finishers, Carpet Layers, Shinglers, Siders, Insulators, Acoustic and Dry Wall Applicators; Shorers and House Movers; Loggers, Lumber and Sawmill Workers; Casket and Coffin Makers; Furniture Workers, Reed and Rattan Workers; Shingle Weavers, Box Makers, Railroad Carpenters and Car Builders and Show, Display and Exhibition Workers and Lathers, regardless of material used; and all those engaged in the operation of wood working or the machinery required in the fashioning, milling or manufacturing of products used in the trade, or engaged as helpers to any of the above divisions or sub-

-1-

divisions, and the handling, erecting and installing material on any of the above divisions or sub-divisions; burning, welding, rigging and the use of any instrument or tool for layout work, incidental to the trade. When the term "Carpenter and Joiner" is used, it shall mean all the subdivisions of the Trade. However, the Union agrees that it will not interfere with existing practices of other unions affiliated with the Building Trades.

## RECOGNITION

1.2    The ASSOCIATION and the EMPLOYER recognizes the UNION as the sole and exclusive Bargaining Representative for the Employees, now or hereafter employed in the Bargaining Unit for the purpose of Collective Bargaining in respect to pay, wages, hours of employment, or other conditions of employment. All work covered by this Agreement shall be performed by the Employees in this Bargaining Unit.

1.3    Any Employee of this Bargaining Unit may perform any or all of the work described herein provided he observes the special rules as described for the particular subdivision or specialty of the trades.

1.4    The EMPLOYER and the UNION agree that neither party shall discriminate against any person directly or indirectly, in such matters as race, creed, color, sex, national origin, age or religion.

## ARTICLE II
## UNION SECURITY

2.1    Maintenance of Membership: All Employees now included in the Bargaining Unit represented by the UNION and having a membership therein must, during the term hereof, as a condition of employment maintain their membership in the UNION.

2.2    All other Employees covered by this Agreement shall, as a condition of employment, become members of the UNION after the seventh (7) day of, but not later than the eighth (8) day following the beginning of, such employment, or the effective date of this Agreement, whichever is later and they shall maintain such membership as a condition of continued employment as hereinafter provided.

2.3    Any Employee who refuses or fails to become a member of the UNION or refuses or fails to maintain his membership therein in accordance with the provisions of Sections 1 and

-2-

2 of this Article, shall forfeit his right of employment, and the EMPLOYER shall, within three (3) working days of being notified by the UNION in writing as to the failure of an Employee to join the UNION or to maintain his membership therein, discharge such Employee. For this purpose the requirements of membership and maintaining membership shall be in accordance with State and Federal Laws. The EMPLOYER shall not be in default unless it fails to act within the required period after receipt of written notice.

2.4    The EMPLOYER shall, on the day that he hires an Employee who is not a member of the UNION, notify the UNION, or the Job Steward of the name, address and date of initial employment of such Employee, as well as the jobsite. In the absence of a Job Steward, the EMPLOYER also agrees to advise the Employee of the provisions of this Article.

## ARTICLE III
## SUB-CONTRACTING

3.1    The parties hereto being in the Construction Industry qualify under the proviso of Section 8 (e) of the National Labor Relations Act, 1947 as amended.

3.2    EMPLOYER shall not contract or subcontract any work coming within the jurisdictional claims of the UNION to any person, firm or corporation not covered by a Collective Bargaining Agreement with the UNION, provided, however, that the provisions of this paragraph shall apply only to the contracting and subcontracting of work to be done at the site of construction, alteration, painting or repair of a building, structure or other work.

3.3    EMPLOYER, in recognition of the territorial and occupational jurisdiction of the UNION, shall not subcontract or contract out jobsite work coming within the jurisdiction of the Carpenters Union nor utilize on the jobsite the services of any other person, company or concern to perform such work that does not observe the same wages, fringe benefits, hours and conditions of employment as enjoyed by the Employees covered by this Agreement.

3.4    Any EMPLOYER who sublets any of the work coming within the jurisdiction of Carpenters shall assume the obligations of any subcontractor to the extent of Carpenter labor employed on work under contract with the EMPLOYER for prompt payment of Employee's Wages, Health and Welfare, Pension and Apprentice Training Contributions, including reasonable attorney fees incurred in enforcing the provisions hereof, provided the subcontractor is not bond-

-3-

ed as provided for in Article XV hereof. The UNION will, upon written request, furnish written certification to any EMPLOYER as to whether a subcontractor is adequately bonded including expiration date of bond, and that wages and payments to Health and Welfare, Pension and Apprentice Contributions are current. The UNION also agrees to notify M.A.R.B.A. of any subcontractor whose bond is being terminated. If the Employees are withdrawn from any job in order to collect contributions to the Carpenters Health and Welfare, Pension and Apprentice Training Program, the Employees who are affected by such stoppage of work shall be paid for lost time up to sixteen (16) hours, provided that two (2) days notice of the intention to remove Employees from the job is given to the EMPLOYER and the subcontractor by the UNION by registered mail.

The EMPLOYER shall furnish the UNION with the names of its subcontractor(s) on each jobsite and with a copy of the subcontractors surety or cash bond agreement evidencing that such subcontractor(s) is obligated to this Agreement and has posted the bond required by Article XV. Such EMPLOYER, from the date the UNION receives such information and for the work performed on the specific referenced jobsite, will not be liable for the subcontractor's wage or fringe benefit obligation. If the UNION notifies the EMPLOYER in writing that the subcontractor is no longer properly bonded, then from that date and for work subsequently performed in the specific referenced jobsite the EMPLOYER'S liability under this section for such subsequent work will resume until such time as the proper bond has been replaced.

3.5    If an EMPLOYER, bound by this Agreement, contracts or subcontracts any work covered by this Agreement to be done at the jobsite of the construction, alteration, painting or repair of a building, structure or other work to any person or proprietor who is not signatory to this Agreement, the EMPLOYER shall require such subcontractor to be bound by all the provisions of this Agreement, or the EMPLOYER shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Chicago Regional Council of Carpenters Welfare Fund, the Chicago Regional Council of Carpenters Pension Fund, the Chicago Regional Council of Carpenters Apprentice and Training Program, as provided in Articles XII, XIII and XIV of this Agreement.

## ARTICLE IV
## WAGES

4.1    The rate of wages shall be as follows:

(a)    Effective June 1, 2005 – Wages shall be $35.32 per hour.
       Effective June 1, 2006 – $3.00 economic increase to be allocated by the Union.
       Effective June 1, 2007 – $3.25 economic increase to be allocated by the Union.

The allocation among the wages and any other contribution shall be at the discretion of the Executive Committee of the UNION. Notice in writing of the allocation shall be given to the EMPLOYER by the UNION thirty (30) days prior to the effective date.

(b)    The Apprentice rates of wages shall be as follows:
       1st Year 40% of Journeyman's Wages
       2nd Year 50% of Journeyman's Wages
       3rd Year 65% of Journeyman's Wages
       4th Year 80% of Journeyman's Wages

### SHOW UP TIME

4.2    Any Employee reporting for work on direction of the EMPLOYER or in the course of the regular job schedule and not being put to work for any reason shall receive two (2) hours pay. Employees who are notified by the EMPLOYER not to report for work shall not be entitled to any pay under this provision. EMPLOYERS may notify Employees by telephone at least two (2) hours prior to the start of work not to report for work. Employees will be required to provide the EMPLOYER with a telephone number that can be used to notify them not to report for work.

### MINIMUM HOURS AFTER WORK COMMENCED

4.3    If an Employee commences work on a job the minimum pay he shall receive for that day shall be four (4) hours pay, except for conditions such as weather, fire, accident or other unavoidable cause beyond the control of the EMPLOYER.

## ARTICLE V
## PAY DAY

5.1    Employees shall be paid once each week, not later than 4:30 p.m. on the regularly established pay day, except in cases of holidays in which case they may be paid on the following work day. Wages are to be paid in full up to two (2) work days preceding the regular desig-

-5-

nated pay day. Wages may be paid by mail. If wages are to be paid by mail the paycheck must be received on or before the regularly established pay day. If the EMPLOYER fails to have sufficient funds for wages due, or for pay checks issued, he shall pay in addition thereto a sum equal to the costs incurred in collecting same, including reasonable attorney fees. If the EMPLOYER issues a check for the payment of wages or fringe benefits which is returned due to a lack of sufficient funds, the EMPLOYER shall be required to make all payments of wages and fringe benefits in cash or by certified check, and in addition the EMPLOYER will be required to reimburse each Employee for any charges assessed.

## PAY ON TERMINATION OF EMPLOYMENT

5.2    (a)    Involuntary Dismissal.

### By Discharge

EMPLOYER may discharge any Employee at any time on any working day provided, however, Employee is given fifteen (15) minutes with pay to gather his tools, and is immediately tendered in hand on the job all wages due him. The parties hereto agree that the payment procedure upon discharge, as outlined above, is a condition precedent to lawful discharge.

### By Lay-Off

When an Employee is laid off due to lack of work, he shall be paid immediately all wages due him to date and he shall receive at least one (1) hour notice prior to 4:30 p.m. In the event such notice is not given, EMPLOYER shall pay one (1) hour of wages in addition to all wages due him. However, when the one (1) hour penalty is in effect, then in that event the one (1) hour wages shall be mailed to the home of the Employee within a twenty-four (24) hour period. If he is not paid on the job at the time he is laid off, he shall be paid four (4) hours of additional pay all of which shall be included in his last pay check.

(b)    Voluntary Termination of Employment.

When an Employee quits his job on his own accord, he may be required to wait, at the option of the EMPLOYER, until the next regular pay day for the wages due him.

5.3    In the event that an Employee does not receive the wages according to the forego-
ing, then in that event he shall be paid in addition thereto at the regular rate, all time he spends,
(1) waiting to be paid, and/or (2) all time expended by him to receive his pay, but in no event less
than one (1) hour of pay nor more than four (4) hours for any time so spent. Saturday, Sundays
and National Holidays are excluded.

5.4    (a)    Employees working from a "Bos'ns Chair," or suspended from cables or
ropes shall receive not less than twenty-five cents ($0.25) per hour above the applicable rate of
journeyman's pay.

(b)    Employees required to work on or with any materials that are treated with
any creosote materials, or acid that may cause rashes, burns, or toxic reaction, or are required to
wear any type of special breathing apparatus as protection against inhalation of noxious gas or
dust, shall not receive less than twenty-five cents ($0.25) per hour above the applicable rate of
journeyman's pay.

(c)    The EMPLOYER shall furnish any necessary protective medication such
as petroleum jelly, to prevent burns from said creosote or chemicals which may prove injurious
to the skin. Gloves shall also be furnished by the EMPLOYER.

(d)    Nothing in this section of this Agreement (premium pay) shall be so con-
strued as to prohibit the opening to arbitration between the EMPLOYER and the UNION at any
time during the term of this Agreement of any work to be performed by Employees, of such nature
as the UNION deems hazardous or which makes exceptional demands on an Employee's health
and safety and thereby qualify for premium pay, which is not covered by Articles in this section.

(e)    In the event that the UNION notifies the EMPLOYER that certain work is
hazardous in nature, as defined in sub-section (b) above, a determination shall be made to estab-
lish the wage scale as well as working conditions and such scale shall be retroactive to com-
mencement of such hazardous work.

**ARTICLE VI**
**HOURS OF LABOR**

6.1    (a)    Eight (8) hours shall constitute a regular day's work, Monday through Friday, beginning at 8:00 a.m. and ending at 4:30 p.m. with one-half (½) hour off from 12:00 noon to 12:30 p.m. for lunch. The lunch period may be adjusted at the EMPLOYER'S option during placement of concrete only, in any one-half (½) hour period between 12:00 noon and 1:00 p.m. The regular work day as described above may be adjusted for cause. In such event, the EMPLOYER must receive approval of the Business Representative of the district or the Regional Council of Carpenters prior to effecting the adjusted work day schedule and in no case should a job begin before 6:00 a.m.

(b)    Provided, however, upon twenty-four (24) hour written notice to Business Representative of the district or the Regional Council, the UNION will grant an adjusted work day which shall be at the option of the Employees upon certification of the Job Steward.

(c)    When work to be performed in occupied buildings is of such a nature that it is not appropriate or practical during the regular work day, such as renovation, alteration and modernization, such work may be performed at an adjusted time; provided a pre-job conference takes place between the Carpenters Regional Council and the EMPLOYER and permission is granted by the Carpenters Regional Council. Contractors utilizing the provision shall notify the Carpenters Regional Council by requesting the pre-job conference on the form provided by the Carpenters Regional Council. By mutual consent of the EMPLOYER and the UNION, the starting and quitting times of any shift, including day work, may be changed for all or any portion of a particular job. However, the adjusted shift shall run a minimum of five (5) consecutive days. All Employees working under this provision shall receive eight (8) hours pay for seven and one-half (7½) hours work. Any and all work in excess of seven and one half (7½) hours work in this provision shall be paid at a rate of double time. An EMPLOYER who violates this section shall pay as a penalty double time for all hours worked.

6.2    There shall be no work done on the following holidays designated herein or days celebrated as such, except with written approval of the UNION and when work is authorized, the rate of pay shall be at the rate of double time:

-8-

NEW YEAR'S DAY, MEMORIAL DAY, FOURTH OF JULY, LABOR DAY, THANKSGIVING DAY, CHRISTMAS DAY.

6.3     Overtime shall be paid for work done before and after the regular work day or the adjusted work day as defined above, except where shift work has been approved. Work performed between 8:00 a.m. and 4:30 p.m. on Saturday or during the first eight (8) hours of an approved adjusted work day on Saturday shall be paid at the rate of time and one-half (1½). Overtime pay for work performed after 4:30 p.m. on Saturday or after the first eight (8) hours of an approved adjusted work day on Saturday and the start of the regular or adjusted work day on Monday, shall be paid at the rate of double time. In the event that there is more than one (1) shift of work on Saturday, overtime pay for all hours of work on Saturday shall be paid at the rate of double time.

6.4     The first two (2) hours of overtime work after working a regular eight (8) hour work day or an approved adjusted work day, Monday through Friday, shall be paid for at the rate of time and one-half (1½) and shall not be mandatory but shall be at the option of the Employee. All other overtime shall be paid for at the rate of double time. At the discretion of the EMPLOY-ER overtime will be permitted for work as required for emergencies such as for the protection of life or property, weather protection, completion of work caused by breakdown of deliveries or failures in concrete form work. In all other cases, overtime work shall require permission of the Business Representative of the district or the Regional Council, for each such case.

6.5     All Employees shall be given time in which to gather their tools prior to quitting time.

6.6     The hours of work for which an Employee shall receive pay shall commence and terminate at the facility provided for Carpenters to change their clothes, provided however, that said facility is at ground level. In the event that such facility is other than at ground level, "time" shall commence and terminate at ground level.

6.7     When an Employee is directed either expressly or impliedly to go from one job-site to another, he shall be paid for all time spent in traveling from the initial site to any other site.

6.8     Employees who are required to work during the regularly defined lunch hour period shall eat no later than one (1) hour after the normal lunch period.

6.9    If an Employee covered by this Agreement sustains an accidental injury arising out of his employment which requires immediate medical care off the premises, during working hours, such Employee shall be paid his regular wages for the time necessarily spent in going to a physician's office, medical center or hospital, as well as the time required to return to the jobsite. Except in unusual circumstances, this provision shall be effective only on the date of injury, unless subsequent visits during working hours are required by EMPLOYER'S physician(s). When it is necessary for an Employee to be taken to a hospital immediately following an injury, he shall be taken to the hospital nearest to the jobsite at the EMPLOYER'S expense.

6.10    Safe and adequate transportation from a jobsite following an injury other than for a minor injury, shall be furnished by the EMPLOYER. The Job Steward shall be notified of all such injuries. If the Steward determines that someone must accompany the injured Employee to the hospital, medical center, physician's office, or Employee's home, the EMPLOYER shall select such person, who shall be compensated at his regular rate for such services. However, nothing contained in this Section 6.9 and Section 6.10 shall prevent an EMPLOYER from discharging an Employee for adequate cause.

In the event an Employee is injured in the course of his employment, he shall not be dismissed from such employment because of his injury, nor shall he be dismissed during the period of medical care required by said injury, unless there is no work available with his EMPLOYER of which he is capable to perform, or unless his dismissal is due to conditions beyond the control of the EMPLOYER.

## TRANSPORTATION

6.11    An Employee who is required to travel to a jobsite shall be reimbursed for lodging when required to remain away from his home overnight. The expense allowance for lodging for each night shall be a minimum of $50 per night.

6.12    On all mill jobs or other jobs where the men cannot drive to the jobsite the EMPLOYER shall furnish transportation to the jobsite when the distance is greater than 3/10ths of a mile.

-10-

6.13    On all jobs where the Employees are required to use EMPLOYER transportation to the jobsite, wages shall commence at 8:00 a.m.

## ARTICLE VII
## SHIFT WORK

7.1    There shall not be more than one (1) shift of work (8:00 a.m. to 4:30 p.m.) performed in any one (1) day and at any one (1) site, except with UNION permission.

7.2    A pre-job conference shall take place between the President of the Carpenters Regional Council and the Business Representative of the district, wherein the work will be performed, and with the EMPLOYER or his representative before shift work will be allowed.

7.3    No shift work shall be permissible unless the shifts shall run a minimum of five (5) consecutive working days. When a jobsite qualifies for the use of a second and third shift the following shall be applicable:

(1)    The First Shift shall start at 8:00 a.m. and end at 4:30 p.m., which shall be eight (8) hours.

(2)    The Second Shift shall start at 4:30 p.m. and end at 12:00 midnight.

(3)    The Third Shift shall start at 12:00 midnight and end at 7:30 a.m.

(4)    The Second and Third Shifts shall receive eight (8) hours pay for seven (7) hours worked.

(5)    Lunch hours for shift work shall be:
First Shift - 12:00 noon to 12:30 p.m.
Second Shift - 8:30 p.m. to 9:00 p.m.
Third Shift - 4:00 a.m. to 4:30 a.m.

7.4    Employees required to work through their specified lunch hour shall be paid double time for that period.

7.5    Any work done in excess of eight (8) hours on the first shift and in excess of seven hours on the second shift and third shift shall be paid wages at the rate of double time.

7.6    All Employees working between the hours of 8:00 a.m. Saturday and 8:00 a.m. Monday shall be paid wages at the rate of double time.

7.7    No Employee shall work more than one (1) shift in any twenty-four hour period.

-11-

7.8    In the event permissible shift work does not fulfill the requirements as stated above, except for conditions beyond EMPLOYER'S control, time worked will revert to premium wages for the second and third shift.

**ARTICLE VIII**
**INSURANCE**

8.1    EMPLOYER agrees to elect to be bound by the provisions of the Illinois Workmen's Occupational Diseases Act and shall furnish to the UNION a Certificate of Insurance covering all liability under such Act, and agrees to further furnish to the UNION a Certificate of Insurance from an insurance company authorized to do business in the State of Illinois covering liability under the provisions of the ILLINOIS Worker's Compensation Act.

8.2    It is agreed that all EMPLOYERS not otherwise required to pay contributions under the Illinois Unemployment Compensation Act, and regardless of the number of men employed, shall voluntarily elect to become subject thereto and liable for the payment of contributions thereunder.

**ARTICLE IX**
**SAFETY**

9.1    The EMPLOYER agrees to adhere to and comply with the provisions of OSHA, the Illinois Health and Safety Act; standards of the American Standards Association; the Safety Provision of the Walsh Healy Public Contracts Act; recommended practices of the National Safety Act; Local Building and Safety Codes and shall also comply with manufacturers' specifications for safe operations of equipment.

9.2    Should a Carpenter be required by law to accompany a Safety Inspector, City, State or Federal (O.S.H.A.) on a Safety Inspection of the jobsite, he shall do so with pay.

**ARTICLE X**
**JOB STEWARD**

10.1    The parties agree that the following basic principles apply to the selection of a Job Steward:

(1)    The UNION requires that a Steward must fully protect the interest of the UNION.

-12-

(2)    The EMPLOYER requires that the Steward be a Carpenter who can effi-ciently perform his duties as a Carpenter and who will not disrupt the job unnecessarily in dis-charging his duties as a Steward.

(3)    To meet the two basic principles agreed to by the parties, it is further agreed:

(a)    The Job Steward shall be a working Carpenter;

(b)    The Steward shall be selected by the Business Representative of the UNION;

(c)    In selecting a Steward preference shall be given UNION Members present-ly employed in the Bargaining Unit of the EMPLOYER on the specific site, provided, however, that if, in the judgment of the Business Representative, no presently employed UNION Member is competent to act as Steward, the Steward shall be selected from outside the Bargaining Unit. A reason shall be given by the Business Representative why no member is competent. However, the reason shall not infringe upon the right of the Business Representative to select the Steward;

(d)    The UNION shall have the right to replace any Steward at any time;

(e)    So long as he is competent to perform the work to be done on the job, the Steward shall be the last Carpenter laid off, except for the Foreman;

(f)    These provisions shall not apply to the work of Pile Driving where the work is performed by a small crew. In the Pile Driving crew, one (1) in the crew shall be desig-nated by the Business Representative as a Steward;

(g)    A Millwright Steward shall be appointed by the Millwright Business Representative on any job where Millwright work is being performed.

(h)    If there is a dispute as to any of the Sections or Subsections of this Article, the provisions of Article XVIII will apply.

10.2 The duties of the Job Steward shall be to report to the Business Representative of the UNION:

(a)    Members' dues delinquencies;

(b)    Violations of Collective Bargaining Agreement;

(c)     Carpenters employed seven (7) days or more, who have not become members of the UNION;

(d)     Disputes and grievances of members;

He shall not have authority to:

(1)     Adjust violations of the Collective Bargaining Agreement.

(2)     Collect any money due the UNION from any person or applicant for membership or any other person.

10.3    Whenever one (1) or more Carpenters are required to work overtime, one (1) of their members shall be the regularly designated Steward, or someone designated by him.

## ARTICLE XI
## FOREMEN

11.1    Where there are three (3) or more Carpenters on any one (1) jobsite and one (1) journeyman shall be assigned the duties of Foreman, and shall receive the wages of a Foreman.

11.2    The wages of a Foreman shall be computed as follows:

(a)     In the case of a Foreman who directs up to four (4) carpenters, the Foreman wage shall be two dollars ($2.00) per hour above the rate of wages for a journeyman.

(b)     In the case of a Foreman who directs five (5) or more carpenters, the Foreman wage shall be two dollars and fifty cents ($2.50) per hour above the rate of wages for a journeyman.

11.3    Where there are ten (10) or more Carpenters on any one (1) jobsite, one (1) must be designated a Foreman, and he shall receive Foreman's wages, he shall devote his time to supervision of the work and he shall not work with the tools.

11.4    Whenever a Foreman or General Foreman is chosen by the EMPLOYER, he shall be a person from the unit described in Article I, paragraph 1.1.

## ARTICLE XII
## HEALTH AND WELFARE FUND

12.1    Each EMPLOYER shall pay into the Chicago Regional Council of Carpenters Welfare Fund (hereinafter referred to as "Health and Welfare Fund") an amount per hour for each

of the first one hundred and seventy-five (175) hours worked for an EMPLOYER during each calendar month by all of its Employees who are covered by this Agreement in amounts determined and allocated by the Executive Committee of the Union effective June 1, 2005, June 1, 2006 and June 1, 2007.

The one hundred seventy-five (175) hour cap will remain in effect throughout the term of this contract providing that the reserve does not fall below fifty-three percent (53%) of the previous twelve (12) months operating expenses of the Health and Welfare Fund. While the one hundred seventy-five (175) hour cap shall cease to be in effect on the last day of the Agreement, contributions for the month of May 2008 will be calculated as in the preceding month and not exceed one hundred seventy-five (175) hours.

12.2     The EMPLOYER agrees to be bound by the Agreement and Declaration of Trust establishing the Chicago Regional Council of Carpenters Health and Welfare Fund, by any present and future amendments thereto and irrevocably designates as his representative on the Board of Trustees such Trustees as are named in said Agreement and Declaration of Trust, as EMPLOYER Trustees, together with their successors selected in the manner provided in said Agreement and Declaration of Trust as it may be amended from time to time, and agrees to be bound by all action taken by said EMPLOYER Trustees pursuant to the said Agreement and Declaration of Trust as amended from time to time.

12.3     The contributions of the EMPLOYERS covered by this Agreement shall be used exclusively to provide group insurance and other related Health and Welfare Benefits for eligible Employees and/or their families in such form or amount as the Trustees of the Health and Welfare Fund may determine.

12.4     Payment of EMPLOYER contributions to the Health and Welfare Fund shall be made on the dates and in the manner and form prescribed by the Trust Agreement or as designated by the Trustees.

12.5     The said Health and Welfare Fund is and shall continue to be administered by an equal number of representatives of the EMPLOYERS and of the UNION pursuant to the Agreement and Declaration of Trust heretofore signed by the EMPLOYERS and the UNION, as now in effect and as it may be amended from time to time, in the manner provided in the

-15-

Agreement and Declaration of Trust. Said Agreement and Declaration of Trust and any present and future amendments thereto are made a part of the Agreement as if set forth herein at length.

12.6    The EMPLOYER shall furnish the Trustees with such information as the names of the Employees, classifications, Social Security numbers, wages, and/or hours worked, and such other information as may be required for the proper and efficient administration of the Health and Welfare Fund.

12.7    The EMPLOYER representatives serving as Trustees, with their successors selected in the manner provided by the Agreement and Declaration of Trust, shall represent all EMPLOYERS in the administration of the Health and Welfare Fund.

12.8    The EMPLOYER may make contributions for all hours worked by Superintendents and other management personnel for whom contributions to the Health and Welfare Fund were heretofore made when such individuals were employed as journeymen Carpenters. Such contributions shall be made in a monthly amount equal to at least 160 times the hourly contribution rate specified in this Article.

12.9    Failure of any EMPLOYER after reasonable written notice by the Administrative Fund Office to furnish reports, pay contributions or comply with the rules and regulations formulated and promulgated by the Trustees of the Chicago Regional Council of Carpenters Health and Welfare Fund, shall be considered a violation of the terms and conditions of this Collective Bargaining Agreement and shall subject this Agreement to cancellation as to such EMPLOYER.

12.10   In the event that an EMPLOYER becomes delinquent in making any of the aforesaid reports and payments and is so advised by formal notification in writing by the Administrative Fund Office, the EMPLOYER shall pay in addition to the amount due, reasonable fees of Certified Public Accountants as expressly used to establish the amount due, reasonable fees of Attorney in effectuating payment, and liquidated damages in an amount as determined in accordance with the Agreement and Declaration of Trust.

12.11   The EMPLOYER shall make contributions on behalf of each of its Employees employed by EMPLOYER in a management or supervisory position who is also engaged in work of a character falling within the jurisdiction covered by this Collective Bargaining Agreement in

-16-